Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
WEISSLAW LLP
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| THE BOOTH FAMILY TRUST, Derivatively on Behalf of VMWARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL DELL, PATRICK P. GELSINGER, ANTHONY BATES, MARIANNE BROWN, MICHAEL BROWN, DONALD CARTY, EGON DURBAN, KAREN DYKSTRA, PAUL SAGAN, and ZANE ROWE, <br><br> Defendants. <br><br> -and- <br><br> VMWARE, INC., a Delaware corporation, <br><br> Nominal Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. <br><br> VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, UNJUST ENRICHMENT, INDEMNIFICATION AND CONTRIBUTION, AND VIOLATION OF THE FEDERAL SECURITIES LAWS <br><br><br><br><br><br><br><br><br><br> DEMAND FOR JURY TRIAL |

Plaintiff the Booth Family Trust ("Booth" or "Plaintiff"), by and through its undersigned counsel, respectfully submits this Verified Stockholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, Unjust Enrichment, Indemnification and Contribution, and violation of the Federal Securities Laws derivatively on behalf of VMWare, Inc. ("VMWare" or the "Company"), against certain of its officers and directors named herein (the "Individual Defendants," as defined below). Plaintiff's allegations are made on personal knowledge as to its own acts, and on

information and belief as to all other allegations, based upon the investigation conducted by and through counsel.

## PRELIMINARY STATEMENT

1.     This derivative action is brought on behalf of and for the benefit of Nominal Defendant VMWare and seeks to recover the Company's damages, as described herein, from the directors and officers whose breaches of fiduciary duties and other legal violations caused those damages.

2.     On February 27, 2020, after the close of stock market trading, and the same day that VMware announced its fourth quarter and fiscal year 2020 financial results, the Company filed a Form 8-K in which it reported that two months earlier the Securities and Exchange Commission ("SEC") had commenced an investigation into the Company's backlog of unfilled orders.  More specifically, VMWare reported that "[i]n December 2019, the staff of the [SEC Enforcement Division] requested documents and information related to VMware's backlog and associated accounting and disclosures," and that the Company "is fully cooperating with the SEC's investigation," but is "unable to predict the outcome of this matter at this time."

3.     A securities class action lawsuit was filed against the Company shortly thereafter.  The class action lawsuit is captioned *Lamartina v. VMWare, Inc., et al.*, No. 20-CV-02182 (N.D. Cal.) (filed March 31, 2020) (the "Securities Class Action"), and seeks damages on behalf of all persons who purchased or otherwise acquired VMware securities between March 30, 2019 and February 27, 2020, inclusive (the "Class Period").

4.     The Company is now besieged with litigation and internal and external investigations as a result of the Individual Defendants' misconduct.  VMWare will be forced to expend substantial sums to defend itself in the lawsuit and investigations and stands to incur further material costs if it resolves either or both by settlement or after trial.  The Company has also been financially damaged by the securities laws violations.  VMWare is named as a defendant in the securities class action lawsuit, leading to substantial expenses to defend itself and further damages if the action is resolved

**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**

unfavorably to the Company.  Further, during the period that VMWare stock is alleged to have been artificially inflated in the securities class action, the Individual Defendants caused VMWare to repurchase substantial quantities of its stock at prices artificially inflated by the false and misleading statements and omissions made by them to the detriment of the Company and its stockholders.

5.     Through this action, Plaintiff seeks to recover from the Individual Defendants, for the benefit of VMWare, the damages inflicted upon the Company through their breaches of fiduciary duty and securities laws violations.  Plaintiff has made no demand upon the Company's Board of Directors since it would be a futile, wasteful and useless act due to the lack of independence and disinterest of the Board members and their substantial likelihood of liability for the misconduct described herein.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the Complaint states a federal question and pursuant to Section 27 of the Exchange Act.  The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the 25 SEC (17 C.F.R. § 240.10b-5).

7.     The Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

8.     This Court has general jurisdiction over each named Defendant who is a resident of California.  Additionally, this Court has specific jurisdiction over each named non-resident Defendant because these Defendants maintain sufficient minimum contacts with California to render jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.  The Company maintains its United States headquarters in California, and because the allegations contained herein are brought derivatively on behalf of VMWare, Defendants' conduct was purposefully directed at California.  Exercising jurisdiction over any non-resident Defendant is reasonable under these circumstances.

**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**

9.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) because: (a) VMWare maintains its principal place of business in this District; (b) one or more of the Defendants resides in or maintains offices in this District; (c) a substantial portion of the transactions and wrongs complained of herein—including the Individual Defendants' primary participation in the wrongful acts—occurred in this District; and (d) the Individual Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## INTRADISTRICT ASSIGNMENT

10.     A substantial portion of the transactions and wrongdoing that give rise to the claims asserted in this action occurred in the County of Santa Clara, and as such, this action is properly assigned to the San Jose division of this Court.

## THE PARTIES

**Plaintiff**

11.     Plaintiff Booth has continuously been a VMWare stockholder at all relevant times.

**Nominal Defendant**

12.     Nominal Defendant VMWare is a corporation duly organized and existing under the laws of the State of Delaware with its principal offices located at 3401 Hillview Avenue, Palo Alto, California 94304.  The Company help customers manage their IT resources across private clouds and complex multi-cloud, multi-device environments.  It provides software in the areas of hybrid cloud, multi-cloud, modern applications, networking and security, and digital workspaces in the United States and internationally, and sells its products through distributors, resellers, system vendors, and systems integrators.  VMware's stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "VMW."

**Defendants**

13.     Defendant Michael Dell has served as Chairman of the Company's Board of Directors at all relevant times.  Michael Dell is also Chairman of the Board of Directors, CEO and a majority stockholder of Dell Technologies Inc. ("Dell"), a current director of SecureWorks Corp. ("SecureWorks"), and a former director of Pivotal Software, Inc. ("Pivotal").   Dell controls approximately 80.9% of VMWare's outstanding common stock, including 31 million shares of VMWare's Class A and all of its Class B common stock, controls the election of 8 out of VMWare's 9 directors, and possesses sufficient voting control to elect the remaining director, making the Company a "controlled company" under the rules of the New York Stock Exchange ("NYSE") and as a practical matter.  He reports no personal ownership of the Company's shares and receives no compensation for his services on the Company's Board because he is an officer of Dell and deemed to have an ownership interest in Dell.  Nonetheless, Michael Dell is the de facto beneficial owner of all of VMWare's shares beneficially owned by Dell and, therefore, among other reasons, is not an independent director of VMWare.

14.     Defendant Gelsinger ("Gelsinger") has served as a director and Chief Executive Officer of VMware at all relevant times and as a member of the VMWare Board's Mergers and Acquisitions Committee.  He is also a director of Carbon Black, Inc. ("Carbon Black"), which was acquired by VMWare in October 2019.  He beneficially owns approximately half a million shares of VMWare's Class A shares.  For the fiscal year ended 2019, Gelsinger received $23,569,191 in total compensation from the Company.  This included $1,000,000 in salary, $23,366,346 in non-equity incentive plan compensation, $20,196,095 in stock awards, and $6,750 in all other compensation.

15.     Defendant Anthony Bates ("Bates") has served as a director of VMware at all relevant times and as a member of the VMWare Board's Compensation and Corporate Governance Committee and as Chair of its Mergers and Acquisitions Committee.  He is also a director of Carbon Black.  Bates beneficially owns approximately 11,200 shares of VMWare's Class A shares.  For the fiscal year

ended 2019, Bates received $412,688 in total compensation from the Company.  This included $135,440 in fees, and $277,248 in restricted stock unit awards.

16.     Defendant Marianne Brown has served as a director of VMware since October 16, 2019.  She joined the VMWare Board after the Company's acquisition Carbon Black, where she is a director.  She is also a director of Akamai Technologies, Inc.

17.     Defendant Michael Brown has served as a director of VMware at all relevant times, chair of the VMWare Board's Audit Committee, and as a member of its Compensation and Corporate Governance Committee and its Related Persons Transactions Committee.  He is also a director of Carbon Black, and a former director of EMC Corp.  He beneficially owns approximately 17,200 shares of VMWare's Class A shares.  For the fiscal year ended 2019, Michael Brown received $400,407 in total compensation from the Company.  This included $123,159 in fees, and $277,248 in restricted stock unit awards.

18.     Defendant Donald Carty ("Carty") has served as a director of VMware at all relevant times and as a member of the VMWare Board's Audit Committee.  He is also a director of Carbon Black, and a past director of both Dell and EMC Corp.  He beneficially owns 11,605 shares of VMWare's Class A shares.  For the fiscal year ended 2019, Carty received $357,688 in total compensation from the Company.  This included $80,440 in fees and $277,248 in restricted stock unit awards.

19.     Defendant Egon Durban ("Durban") has served as a director of VMware at all relevant times and as a member of the VMWare Board's Mergers & Acquisitions Committee.  He is also a member of the Dell board of directors (together with Michael Dell) since 2013, a managing partner of Silver Lake Partners, a private equity firm with significant stock holdings in Dell, a former director of Pivotal, a prior indirect majority-owned subsidiary of Dell in which VMWare had an ownership interest and which VMWare acquired in December 2019, and a director of Carbon Black and SecureWorks.  He reports no ownership of the Company's shares and receives no compensation for

6

his services on the Company's Board because he is an officer of Dell and deemed to have an ownership interest in Dell.

20.     Defendant Karen Dykstra ("Dykstra") has served as a director of VMware at all relevant times and as a member of the VMWare Board's Audit Committee and as Chair of its Related Persons Transactions Committee.  She is also director of Carbon Black.  She beneficially owns 8,360 shares of VMWare's Class A shares.  For the fiscal year ended 2019, Dykstra received $641,939 in total compensation from the Company.  This included $328,020 in fees and $277,248 in restricted stock unit awards.

21.     Defendant Paul Sagan ("Sagan") has served as the lead director of VMware at all relevant times and as a member of the VMWare Board's Audit Committee and as Chair of its Compensation and Corporate Governance Committee.  He is a former director of EMC Corp.  He beneficially owns 15,075 shares of VMWare's Class A shares.  For the fiscal year ended 2019, Sagan received $648,911 in total compensation from the Company.  This included $371,663 in fees and $277,248 in restricted stock unit.  He is also a director of Carbon Black, and a former director of Akamai Technologies, Inc.

22.     Defendant Zane Rowe ("Rowe") has served as VMWare's Chief Financial Officer ("CFO") and Executive Vice President at all relevant times.  He beneficially owns 67,975 shares of VMWare's Class A shares.  For the fiscal year ended 2019, Sagan received $12,127,622 in total compensation from the Company.  This included $750,000 in salary, $10,414,622 in stock awards, $956,250 in non-equity incentive plan compensation, and $6,750 in other compensation.

23.     The Defendants referenced in ¶¶ 13-22 are collectively referred to herein as the Individual or Director Defendants.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

24.     By reason of the Individual Defendants' positions as directors and/or officers of VMWare, and because of their ability to control the business and corporate affairs of the Company,

the Individual Defendants owe VMWare and its shareholders fiduciary obligations of good faith, loyalty, and due care, and are required to use their utmost ability to control and manage VMWare in a fair, just, honest and equitable manner.

25.     The Individual Defendants, consistent with their duties, were and are required to act in furtherance of the best interests of VMWare and its shareholders — not in furtherance of their own or anyone else's personal interest or benefit.

26.     Each Individual Defendant owes to VMWare and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company, in the use and preservation of its property and assets, and to uphold the highest obligations of good faith, loyalty, due care, and fair dealing.   Additionally, the Individual Defendants have a duty to promptly disseminate accurate and truthful information with regard to the Company's management and operations so that the market price of the Company's stock would accurately reflect the Company's true financial condition, business prospects and value.

27.     To discharge their duties, the Individual Defendants were and are required to exercise reasonable and prudent supervision over the management, policies, practices and internal controls of the Company.

28.     The conduct of the Individual Defendants complained of herein involves a violation of their fiduciary duties, the absence of good faith on their part, and a disregard of their duties to the Company that Defendants were aware or should have been aware posed a risk of serious injury to the Company.

29.     The Individual Defendants breached their fiduciary duties by, among other things, failing to implement appropriate and effective internal controls, allowing and/or authorizing the dissemination of false and misleading information and failing to take action to recover the damages caused to the Company, permitting the Company to be mismanaged, and failing to investigate and

take action with regard to red flags of misconduct when such investigation and timely action could have prevented, or at least minimized, the damage caused to the Company and its shareholders.

30.    By reason of their positions of control and authority as executive officers and/or directors of VMWare, the Individual Defendants were able to and did, directly and indirectly, control the matters and transactions complained of herein.  The Individual Defendants have and have had the duty to exercise reasonable control and supervision over the officers, employees, agents, business and operations of VMWare; to be and remain informed as to how VMWare was operating and, upon receiving notice or information of an imprudent, questionable or unsound decision, condition, or practice, make reasonable inquiry and, if necessary, make all reasonable remedial efforts; and to conduct the affairs of VMWare in the best interests of the Company for the benefit of its shareholders.

## A.    The Business Conduct Guidelines

31.    According to VMWare's Business Conduct Guidelines (the "Conduct Guidelines"), the Individual Defendants have a responsibility to "live [up to] these values at every level in the company. . . [and the] Guidelines outline the standards of behavior expected of each one of us at all times. They are not simply about how to comply with the law."

32.    The Conduct Guidelines charges the Individual Defendants with "compliance with the law [as] the minimum requirement of every person in the VMware community."  In fact, The Conduct Guidelines go further by demanding that the Individual Defendants act" "with integrity and upholding our values."  They specifically require that "VMware books and records must reflect all transactions included in its results of operations and financial position truthfully, accurately, and in compliance with generally accepted accounting principles."

33.    According to the Conduct Guidelines:

E.  ENSURE FULL, FAIR, ACCURATE, TIMELY, AND UNDERSTANDABLE DISCLOSURE AND FINANCIAL REPORTING As a public company, VMware is required to file periodic and other reports and documents with the U.S. Securities and Exchange Commission ("SEC") and to make other public communications. VMware must provide accurate, complete, and timely disclosure in those SEC reports and

documents and in its other public communications, including disclosure of VMware financial results and financial condition. Accordingly, we must fully meet our responsibilities to ensure that VMware financial reports and records are in strict compliance with all applicable laws, generally accepted accounting principles, and VMware policies. We must provide information that is accurate, complete, objective, relevant, timely, and understandable; act in good faith, responsibly, with due care, competence, and diligence, without misrepresenting or omitting material facts or allowing our independent judgment to be subordinated; and impose and maintain appropriate controls over all assets and resources employed. VMware people must fully support the audit process and not take any action to improperly influence any public accountant performing an audit or review of VMware financial statements. These responsibilities apply to each of us, but are especially important if you are a member of the VMware Finance Department or are otherwise involved with VMware financial reporting.

**B.     The Corporate Governance Guidelines**

34.     The Individual Defendants are responsible for overseeing management performance on behalf of VMware shareholders, to ensure that the long-term interests of shareholders are being served, monitor adherence to Company standards and policies, promote responsible corporate citizenship, and perform the duties and responsibilities assigned to them by law.

35.     The Individual Defendants must abide by the duties imposed by the Corporate Governance Guidelines, which include:

- Spending the time and attention necessary to discharge their duties properly;

- Reviewing and assessing the CEO's performance annually to ensure he is providing effective leadership of the Company; and

- Acting ethically and adhering to the Corporation's Conduct Guidelines.

**C.    The Audit Committee Charter**

36.     VMWare's Audit Committee is appointed to assist the Board in fulfilling its responsibilities to oversee, among other things:

-  the integrity of VMWare's financial statements and other financial information provided to shareholders and others;

- the performance of the Company's internal audit function and independent auditor; and

-  Compliance with legal, ethical and regulatory requirements.

**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**

37.   Further, the Audit Committee Charter imposes the following, among other, responsibilities on its members:

- Review the external audit of VMWare's financial statements and recommend that the audited financial statements be included in the Company's Annual Report on Form 10-K;

- Review financial statements to be included in the Company's Annual Report, such as risk factors, and the adequacy of such disclosures;

- Review with management the Company's interim financial statements, prior to filing, to be included in Forms 10-K and 10-Q;

- In consultation with management, the internal auditors and the auditors, review the Company's guidelines and policies with respect to risk assessment, risk management and internal financial and disclosure controls;

- Review with management and the auditors, as appropriate, earnings releases, as well as the type of financial information to be made public with such disclosures;

- Review at least annually internal quality control procedures described by the independent auditor, as well as all material issues raised by its most recent review;

- Review legal, regulatory, and financial risks with management;

- Review, with appropriate members of senior management, the Company's disclosure controls and procedures, including management's conclusions about the effectiveness thereof and any material non-compliance therewith, and any audit steps adopted in light of any such non-compliance; and

- Maintain high standards of responsibility and ethics.

**D.    The Compensation and Corporate Governance Committee Charter**

38.   The CCG Committee's Charter mandates, among other things: (i) the Committee's oversight of corporate governance matters; (ii) the evaluation of the Board; (iii)  developing and recommending Corporate Governance Guidelines; and (iv) leading the Board in an annual performance review of the  Board and its Committees.

39.   The Charter also charges the CCG Committee with the following, among other, responsibilities:

- The compensation and benefits of non-employee directors;

- The annual review of the qualifications of Board members;

- The annual review of the performance of the Board Committees;

- VMWare's Corporate Governance Guidelines and any proposed changes; and

- Consider matters of corporate governance and periodically review the Corporation's corporate governance policies and recommend to the Board modifications to the policies as appropriate.

40.     The events that have transpired, as alleged herein, demonstrate that the Individual Defendants breached their fiduciary duties of loyalty and good faith in failing, *inter alia*, to identify, maintain, and manage key areas of the Business Conduct Guidelines and Corporate Governance Guidelines, to wit: ensure compliance with the law by maintaining internal controls, and issuing financial and other public statements that represent a true picture of the Company's financial condition, business prospects, growth, and sales.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

41.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

42.     During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) conceal material information relating to VMWare's business, operations, and prospects that rendered statements in VMWare's SEC filings and public announcements false and misleading; (ii) enhance the Individual Defendants' executive and directorial positions at VMWare and the profits, power, and prestige that the Individual Defendants enjoyed as a result of holding these positions. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants, collectively and individually, took the actions set forth herein.

43.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, unjust enrichment, and indemnification and contribution; and to conceal adverse information concerning the Company's operations,

44.     Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

45.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## SUBSTANTIVE ALLEGATIONS

**A.    Materially False and Misleading Statements During the Class Period**

46.     On March 29, 2019, during after-market hours, VMware filed an Annual Report on Form 10-K reporting financial and operating results for the quarter and fiscal year ended February 1, 2019 (the "2019 10-K").  With respect to the Company's backlog, the 2019 10-K reported: (i) "[a]s of February 1, 2019, our total backlog was $449 million"; (ii) "backlog related to licenses was $147 million, which we generally expect to deliver and recognize as revenue during the following quarter"; (iii) "[b]acklog totaling $34 million as of February 1, 2019 is excluded from the remaining performance obligations because such contracts are subject to cancellation until fulfillment of the performance obligation occurs"; and (iv) "[a]s of February 2, 2018, our total backlog was approximately $285 million and our backlog related to licenses was approximately $99 million."

47.     With respect to VMware's methodology for, and description of, its backlog, the 2019 10-K represented that: (i) "[b]acklog is comprised of unfulfilled purchase orders or unfulfilled executed agreements at the end of a given period and is net of related estimated rebates and marketing development funds"; (ii) "[b]acklog primarily consists of licenses, maintenance and services"; (iii) "[t]he amount and composition of backlog will fluctuate period to period, and backlog is managed based upon multiple considerations, including product and geography"; and (iv) Defendants "do not believe the amount of backlog is indicative of future sales or revenue or that the mix of backlog at the end of any given period correlates with actual sales performance of a particular geography or particular products and services."

48.     With respect to VMware's disclosure controls and procedures and internal control over financial reporting, the 2019 10-K represented: (i) "as of the end of the period covered by this report, our disclosure controls and procedures were effective"; (ii) "as of February 1, 2019, our internal control over financial reporting was effective in providing reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles"; and (iii) "[t]here were no changes in our internal control over financial reporting during the most recent fiscal quarter ended February 1, 2019 that materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

49.     In addition to these assertions regarding the effectiveness of VMware's controls and procedures and internal control over financial reporting, the 2019 10-K also contained generic, boilerplate representations that "[m]anagement does not expect . . . that our disclosure controls and procedures or our internal control over financial reporting will prevent or detect all errors and fraud"; that "[a]ny control system, no matter how well designed and operated, is based upon certain assumptions and can provide only reasonable, not absolute, assurance that its objectives will be met"; and that "no evaluation of controls can provide absolute assurance that misstatements due to error or

fraud will not occur or that all control issues and instances of fraud, if any, within the Company have been detected." Plainly, these risk warnings were generic "catch-all" provisions that were not tailored to VMware's actual known risks of noncompliance with its backlog reporting requirements.

50.     Appended as exhibits to the 2019 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that the 2019 10-K "fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 and the information contained in such [2019 10-K] fairly presents, in all material respects, the financial condition and results of operations of VMware, Inc."

51.     On June 10, 2019, VMware filed a Form 10-Q reporting the Company's financial and operating results for the quarter ended May 3, 2019 (the "1Q20 10-Q").  With respect to VMware's backlog, the 1Q20 10-Q reported: (i) "[a]s of May 3, 2019, our total backlog was $180 million"; (ii) "backlog related to licenses was $48 million, which we generally expect to deliver and recognize as revenue during the following quarter"; (iii) "[b]acklog totaling $17 million as of May 3, 2019 was excluded from the remaining performance obligations because such contracts are subject to cancellation until fulfillment of the performance obligation occurs"; (iv) "[a]s of February 1, 2019, our total backlog was approximately $449 million and our backlog related to licenses was approximately $147 million"; and (v) "[b]acklog totaling $34 million as of February 1, 2019 was excluded from the remaining performance obligations because such contracts are subject to cancellation until fulfillment of the performance obligation occurs."

52.     Additionally, the 1Q20 10-Q contained representations substantively identical to those referenced in ¶¶ 46-49, supra, concerning VMware's methodology for, and description of, its backlog; the effectiveness of VMware's disclosure controls and procedures; generic risk warnings about the Company's disclosure controls and procedures and internal control over financial reporting; and SOX certifications signed by the Individual Defendants.

53.     Finally, although the 1Q20 10-Q acknowledged that "[d]uring the first quarter of fiscal 2020, we completed the implementation of a new lease accounting software and related controls to enable us to adopt Topic 842, Leases," the 1Q20 10-Q nonetheless assured investors that "[t]here were no other changes in our internal control over financial reporting during the most recent fiscal quarter ended May 3, 2019 that materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

54.     On September 9, 2019, VMware filed a Form 10-Q reporting the Company's financial and operating results for the quarter ended August 2, 2019 (the "2Q20 10-Q").   With respect to VMware's backlog, the 2Q20 10-Q reported: (i) "[a]s of August 2, 2019, our total backlog was $117 million"; (ii) "backlog related to licenses was $13 million, which we generally expect to deliver and recognize as revenue during the following quarter"; (iii) "[b]acklog totaling $9 million as of August 2, 2019 was excluded from the remaining performance obligations because such contracts are subject to cancellation until fulfillment of the performance obligation occurs"; (iv) "[a]s of February 1, 2019, our total backlog was approximately $449 million and our backlog related to licenses was approximately $147 million"; and (v) "[b]acklog totaling $34 million as of February 1, 2019 was excluded from the remaining performance obligations because such contracts are subject to cancellation until fulfillment of the performance obligation occurs."

55.     Additionally, the 2Q20 10-Q contained representations substantively identical to those referenced in ¶¶ 46-49, supra, concerning VMware's methodology for, and description of, its backlog; the effectiveness of VMware's disclosure controls and procedures, and the lack of any changes in its internal control over financial reporting that materially affected, or are reasonably likely to materially affect, such reporting; generic risk warnings about the Company's disclosure controls and procedures and internal control over financial reporting; and SOX certifications signed by the Individual Defendants.

56.     On December 6, 2019, VMware filed a Form 10-Q reporting the Company's financial and operating results for the quarter ended November 1, 2019 (the "3Q20 10-Q").  With respect to VMware's backlog, the 3Q20 10-Q reported: (i) "[a]s of November 1, 2019, our total backlog was $71 million"; (ii) "backlog related to licenses was $33 million, which we generally expect to deliver and recognize as revenue during the following quarter"; (iii) "[b]acklog totaling $10 million as of November 1, 2019 was excluded from the remaining performance obligations because such contracts are subject to cancellation until fulfillment of the performance obligation occurs"; (iv) "[a]s of February 1, 2019, our total backlog 20 was approximately $449 million and our backlog related to licenses was approximately $147 million"; and (v) "[b]acklog totaling $34 million as of February 1, 2019 was excluded from the remaining performance obligations because such contracts are subject to cancellation until fulfillment of the performance obligation occurs."

57.     Additionally, the 3Q20 10-Q contained representations substantively identical to those referenced in ¶¶ 46-49, supra, concerning VMware's methodology for, and description of, its backlog; the effectiveness of VMware's disclosure controls and procedures, and the lack of any changes in its internal control over financial reporting that materially affected, or are reasonably likely to materially affect, such reporting; generic risk warnings about the Company's disclosure controls and procedures and internal control over financial reporting; and SOX certifications signed by the Individual Defendants.

58.     The statements referenced in ¶¶ 46-57 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) VMware's reporting with respect to its backlog of unfilled orders was not in compliance with all relevant accounting and disclosure requirements; (ii) the foregoing subjected the Company to a foreseeable risk of heightened

regulatory scrutiny and/or investigation; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

**B.  The Truth Is Revealed**

59.     On February 27, 2020, VMWare filed a Form 8-K disclosing the SEC's commencement of an investigation in December 2019 into the Company's backlog of unfilled orders. Specifically, the Form 8-K disclosed that "[i]n December 2019, the staff of the Enforcement Division . . . requested documents and information related to VMWare's backlog and associated accounting and disclosures,"  adding that "VMware is fully cooperating with the SEC's investigation," but is "unable to predict the outcome of this matter at this time."

60.     VMware's stock price fell $15.11 per share, or 11.14%, to close at $120.52 per share on February 28, 2020.

**C.  The Company's Losses Through Share Buybacks**

61.     At the same time that VMWare's stock price was inflated due to the Individual Defendants' foregoing breaches of fiduciary duty, the Individual Defendants caused the Company to repurchase millions of shares of its common stock at artificially inflated prices to the detriment of VMWare and its stockholders.

62.     Just between November 2 and 29, 2019, the Company repurchased 330,700 of its own Class A common stock in the open market at the average price of $166.29 per share, for approximately $55 million.

63.     Furthermore, over the whole fiscal year 2020 ended January 31, 2020, the Company repurchased a total of 7,664,000 of its own Class A common stock in the open market at the weighted average price per share of $174.02, for a total of $1.334 billion.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

64.     Plaintiff has not made a demand on VMWare's Board to investigate and prosecute the wrongdoing alleged herein.  Such a demand is futile and therefore excused because: (i) a majority of

**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**

the Board is unable to conduct an independent and disinterested investigation of the alleged wrongdoing; and (ii) the Board's wrongful conduct is not subject to protection under the Business Judgment Rule.  Under such circumstances, the demand requirement is excused since making such a demand on the Board would be futile.

65.    This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

66.    Plaintiff will adequately and fairly represent the interests of VMWare in enforcing and prosecuting its rights.

67.    The VMWare Board consists of nine (9) directors.  A majority of the Board faces a substantial likelihood of liability for breaches of fiduciary duty for their participation or acquiescence in the wrongs alleged herein and/or failures to comply with the Company's Conduct Guidelines.  Therefore, demand would be futile as to each of the Individual Defendants.

68.    The Individual Defendants face a substantial likelihood of liability for their individual misconduct.  The Individual Defendants were required to ensure that the Company implemented and maintained an effective system of internal controls so that the Company's SEC filings, financial statements, press releases, and other public statements and presentations on behalf of the Company were accurate and complete.

69.    VMWare has been, and will continue to be, exposed to significant losses due to the wrongdoing complained of herein.  The Individual Defendants have not attempted to recover the damages the Company has suffered or will suffer thereby.  Further, the Individual Defendants have failed to terminate the parties responsible for the wrongdoing alleged herein and permitted them to continue in their positions.

70.    The Individual Defendants reviewed, authorized, and/or caused the publication of materially false and misleading statements and failed to make certain that adequate controls and procedures were in place.

**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**

71.     These Individual Defendants, if demand were made of them, would have to evaluate whether to sue themselves and/or their fellow directors in evaluating the wrongdoing alleged and the request to bring an action for their breaches of fiduciary duties.  This is not something they would or could do.  Therefore, demand upon them would be futile.

72.     In addition, Defendants Sagan, Bates, and Michael Brown failed to fulfill their responsibilities as members of the Board's CCG Committee. The CCG Committee was charged with monitoring compliance with VMWare's Corporate Governance Guidelines, which requires that the Individual Defendants review the Corporation's corporate governance policies and recommend modifications to the policies as appropriate.  The CCG Committee Defendants utterly failed to fulfill this responsibility, as demonstrated by VMWare's deceptive and unlawful accounting for the Company's backlog.  Accordingly, because defendants Sagan, Bates, and Michael Brown face a substantial likelihood of liability, any demand upon them is futile.

73.     Defendants Michael Brown, Carty, Dykstra, and Sagan, as members of the Audit Committee, reviewed and approved the improper statements and earnings guidance.  The Audit Committee's Charter provides that it is responsible for compliance with accounting, legal, regulatory, and public disclosure requirements.  Thus, the Audit Committee Defendants were responsible for knowingly or recklessly allowing the improper statements related to the Company's backlog and financial and disclosure controls. Moreover, the Audit Committee Defendants reviewed and approved the improper press releases made to the public.  Despite their knowledge or reckless disregard, the Audit Committee Defendants caused these improper statements.  Further, the Audit Committee Charter provides that it is responsible for reviewing and discussing with management significant business risks facing the Company, including business, legal, and reputational risks.  Accordingly, the Audit Committee Defendants breached their fiduciary duty of loyalty and good faith because they participated in the wrongdoing described herein.  Thus, Defendants Michael Brown, Carty, Dykstra,

and Sagan face a substantial likelihood of liability for their breach of fiduciary duties, rendering any demand upon them futile.

74.     Additionally, suit by the current directors of VMWare to remedy the wrongs complained of herein would expose defendants Gelsinger, Rowe, and VMWare to liability for violations of the federal securities laws in the pending securities class actions, and would result in civil actions being filed against one or more of the other Individual Defendants.  The securities class actions allege violations of sections 10(b) and 20(a) of the Exchange Act.  If the Board elects for the Company to press forward with its right of action against Defendants Gelsinger and Rowe in this action, then VMWare's efforts would compromise its defense of the securities class actions. Accordingly, demand on the Board is excused. Further, because Defendant Gelsinger is named as a defendant in the pending securities class actions, he is incapable of impartially considering a demand to commence and vigorously prosecute this action. As such, demand is excused upon defendant Gelsinger.

75.     Furthermore, inasmuch as Defendants Michael Dell, Gelsinger, Bates, Michael Brown, Carty, Durban, Dykstra, and Sagan are employees of VMWare and/or significant stakeholders in VMWare by virtue of their respective beneficial interest in the Company's stock, they derive substantial income and benefit from VMWare, and cannot be independent.  As such, Demand upon them would be futile.

76.     Finally, the numerous interlocking relationships between the members of the Board demonstrate further their close relationships and inability to be independent and to impartially consider a demand.  Defendants Michael Dell and Durban are also directors of and significant shareholders of Dell (in which Defendant Carty was a former Director), which itself controls VMWare, and they additionally are or were acting together as directors of SecureWorks, Pivotal and Carbon Black, the latter two companies which were acquired by VMWare during the Class Period. Indeed, a supermajority of the Individual Defendants serve together on the board of Carbon Black.

**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**

77.     Similarly, Defendants Carty, Michael Brown and Sagan are former directors of EMC Corp., where they also served together for a long time.

78.     Therefore, majority of the VMWare Board faces a substantial likelihood of liability for breaches of fiduciary duty for their participation or acquiescence in the wrongs alleged herein and/or failures to comply with the Company's Conduct Guidelines.  Therefore, demand would be futile as to each of the Individual Defendants

79.     No demand to commence this lawsuit was made by the Plaintiff upon VMWare's stockholders because such a demand would be a futile as:

(a) VMWare is a publicly traded corporation.  According to the Form 10-K filed by VMWare with the SEC on March 26, 2020, the Company has 418,009,379 shares of common stock issued and outstanding and, as such, has thousands of stockholders;

(b) Plaintiff does not know the names, addresses, and/or phone numbers of VMWare stockholders and do not have the means to collect that information; and

(c) The cost of making a demand on all VMWare shareholders would be prohibitive and, in any event, is impracticable.

## COUNT I

### Breach of Fiduciary Duty
### (Derivatively Against the Individual Defendants)

80.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

81.     The Individual Defendants owed and owe fiduciary duties to VMWare and its shareholders.  By reason of their fiduciary duties, the Individual Defendants owed and owe VMWare and its shareholders the highest obligation of good faith, due care and loyalty in the administration of the affairs of the Company, including, without limitation, disseminating truthful, full, and accurate information regarding: (i) VMware's reporting of its backlog of unfilled orders; (ii) that said reporting

did not comply with accounting and disclosure requirements; (iii) subjecting the Company to a foreseeable risk of heightened regulatory scrutiny and/or investigation; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

82.     VMWare now faces material liability for the Individual Defendants' misconduct.

83.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary duties, VMWare has sustained, and will continue to sustain, significant damages – both financially and to its reputation and goodwill.

84.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company for the damages resulting directly and proximately from these breaches of fiduciary duty.

## COUNT II

### Waste of Corporate Assets
### (Derivatively Against the Individual Defendants)

85.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

86.     The Individual Defendants breached their fiduciary duties and, thereby, caused VMWare to waste its assets, expend millions of dollars of corporate funds, and impair its reputation and credibility for no legitimate business purpose, as a result of which the Company has been and continues to be substantially damaged.

87.     As a direct and proximate result of these breaches of their fiduciary duties, VMWare has sustained and will continue to sustain significant damages, as alleged herein.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

## COUNT III

### Unjust Enrichment
### (Derivatively Against the Individual Defendants)

88.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

89.     Each of the Individual Defendants has acted and is acting with knowledge of or with reckless, disregard to the fact that the other Individual Defendants are in breach of their fiduciary duties to VMWare and have participated in such breaches of fiduciary duties.

90.     In committing the wrongful acts alleged herein, each of the Individual Defendants has pursued, or joined in the pursuit of, a common course of conduct.  They have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to pursuing the wrongful conduct that gives rise to their primary liability, the Individual Defendants also aided and abetted, and/or assisted, each other in breaching their duties.

91.     Because the actions described herein occurred with the Board's supervision and authority, each of the Individual Defendants played a direct, necessary, and substantial part in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

92.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, the Individual Defendants acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and were aware of their overall contributions to and furtherance of the wrongdoing.

## COUNT IV

### Indemnification and Contribution
### (Derivatively Against the Individual Defendants)

93.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

94.     The Individual Defendants had a duty to VMWare and its shareholders to prudently supervise, manage and control the operations, business and internal controls of VMWare.

95.     The Individual Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the business of VMWare in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, the Individual Defendants breached their duties of good faith, due care, loyalty, diligence and candor in the management and administration of VMWare's affairs and in the use and preservation of Company assets.

96.     During the course of the discharge of their duties, the Individual Defendants knew or disregarded the unreasonable risks and losses associated with their misconduct.  As a result, the Individual Defendants grossly mismanaged the Company.

## COUNT V

### Violations of Section 10(b) of the Exchange Act
### (Derivatively Against the Individual Defendants)

97.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

98.     The Individual Defendants disseminated and/or approved false and/or misleading statements about VMWare, which they knew, or recklessly disregarded, were false or misleading and/or omitted material information and were intended to deceive, manipulate, or defraud.  Those false or misleading statements and the Individual Defendants' course of conduct were designed to, and did, artificially inflate the price of the Company's common stock.

99.     At the same time that VMWare's stock price was inflated due to the Individual Defendants' false or misleading statements, the Individual Defendants caused the Company to repurchase millions of shares of common stock at artificially inflated prices to the detriment of VMWare and its stockholders.  Between November 2 - 29, 2019, the Company repurchased 330,700

of its own Class A common stock in the open market at the average price of $166.29 per share, for approximately $55 million.  Over the whole fiscal year 2020 ended January 31, 2020, the Company repurchased a total of 7,664,000 of its own Class A common stock in the open market at the weighted average price per share of $174.02, for a total of $1.334 billion.

100.    The Individual Defendants violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 in that they: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon VMWare in connection with the Company's purchases of VMWare stock.

101.    The Individual Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce or the United States mails, engaged and participated in a continuous course of conduct that operated as a fraud and deceit upon the Company; made various false or misleading statements of material facts and omitted material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading; made the above statements intentionally or with a severely reckless disregard for the truth; and employed devices and artifices to defraud in connection with the purchase and sale of VMWare's stock.

102.    The Individual Defendants were executives and/or the directors of the Company, and were, therefore, directly responsible, and are liable for all materially false and misleading statements and material omissions alleged above.

103.    The misstatements and omissions of material facts set forth herein were either known to Individual Defendants or were so obvious that Individual Defendants should have been aware of them.  The Individual Defendants also had a duty to disclose new information that came to their attention and rendered their prior statements to the market materially false or misleading.

104.    Individual Defendants' false or misleading statements and omissions were made in connection with the purchase or sale of VMWare's stock by the Company.

105.    As a result of Individual Defendants' misconduct, VMWare has and will suffer damages in that it paid artificially inflated prices when purchasing VMWare common stock and suffered losses when the previously undisclosed facts occurring during the relevant period were disclosed.   VMWare would not have purchased these securities at the prices it paid, but for the artificial inflation in the Company's stock price caused by Individual Defendants' false or misleading statements.

106.    As a direct and proximate result of Individual Defendants' wrongful conduct, the Company suffered damages in connection with its purchases of VMWare stock.   By reason of such conduct, Individual Defendants are liable to the Company pursuant to Section 10(b) of the Exchange Act and SEC Rule 10b-5.

107.    Plaintiff brings this claim within two years of discovery of the facts constituting the violation and within five years of the violation.

## COUNT VI

### Violations of Section 20(A) of the Exchange Act
### (Derivatively Against the Individual Defendants)

108.    Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

109.    This Count is asserted on behalf of VMWare against each of the Individual Defendants for violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

110.    During their tenures as officers and/or directors of VMWare, each of the Individual Defendants was a controlling person of the Company within the meaning of Section 20(a) of the Exchange Act.   By reason of their positions of control and authority as officers and/or directors of VMWare, the Individual Defendants had the power and authority to direct the management and

activities of the Company and its employees, and to cause the Company to engage in the wrongful conduct complained of herein. Each of the Individual Defendants was able to and did control, directly and indirectly, the content of the false and misleading public statements described herein, thereby causing the dissemination of the false and misleading statements and omissions of material facts as alleged herein.

111.   In their capacities as directors and/or senior corporate officers of the Company, and as more fully described above, the Individual Defendants had direct involvement in the day-to-day operations of the Company, in reviewing and managing its financial, regulatory and legal compliance, internal control procedures, and its accounting and reporting functions. As a result of the foregoing, the Individual Defendants, as a group and individually, were controlling persons of VMWare within the meaning of Section 20(a) of the Exchange Act.

112.   As set forth above, the Individual Defendants violated Section 10(b) of the Exchange Act by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons of VMWare and as a result of their own aforementioned conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act, to the Company. Moreover, as detailed above, during the respective times the Individual Defendants served as officers and/or directors of VMWare, each of these Defendants was culpable for their material misstatements and omissions, as set forth above.

113.   As a direct and proximate result of the Individual Defendants' conduct, VMWare has suffered damages in connection with the wrongs alleged above.

114.   Plaintiff on behalf of VMWare has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

a.  Determining that this action is a proper derivative action maintainable under the law and that demand is excused;

b.  Finding that the Individual Defendants breached their fiduciary duties;

c.  Finding that all Individual Defendants were unjustly enriched;

d.  Awarding damages against all Individual Defendants in favor of the Company as a result of the Individual Defendants' breaches of fiduciary duty;

e.  Granting extraordinary equitable and injunctive relief as permitted by law and/or equity in favor of the Company and against the Individual Defendants;

f.  Directing the Company to take all necessary actions to reform and improve its internal controls and Board oversight over its financial reporting and public disclosures;

g.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorney's, consultant's and expert's fees; and

h.  Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  May 5, 2020

WEISSLAW LLP
JOEL E. ELKINS

By:  */s/ Joel E. Elkins*
Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

WEISSLAW LLP
David C. Katz
Mark D. Smilow
Joshua M. Rubin
1500 Broadway, 16th Floor
New York, NY  10036
Telephone:  212/682-3025
Facsimile:  212/682-3010

*Plaintiff's Counsel*