1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE VMWARE, INC. STOCKHOLDER
DERIVATIVE LITIGATION

Case No.   20-cv-03079-EJD

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS
CONSOLIDATED SECOND AMENDED
SHAREHOLDER DERIVATIVE
COMPLAINT**

Re: ECF. No. 74

Before the Court is the Motion to Dismiss the Consolidated Second Amended Shareholder Derivative Complaint ("Motion") filed by Defendants Anthony Bates, Marianne Brown, Michael Brown, Donald Carty, Michael Dell, Egon Durban, Karen Dykstra, Patrick Gelsinger, Paul Sagan, and Zane Rowe (together, "Defendants") and Nominal Defendant VMware, Inc. ("VMware"). ECF No. 74. Plaintiffs the Booth Family Trust, Hugues Gervat, and Stacie Williams (together, "Plaintiffs") allege claims on behalf of VMware for breach of fiduciary duties; insider trading; contribution based on violations of Sections 10(b) and 21D of the Securities and Exchange Act of 1934 (the "Exchange Act"); derivative claims for violations of Section 10(b) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder; and unjust enrichment. Plaintiffs' claims are based on Defendants' allegedly false and misleading statements made in press releases, conference calls, and financial reports between August 2018 and February 2020 regarding VMware's quarterly "backlog." Defendants argue that the Consolidated Second Amended Shareholder Derivative Complaint ("SAC") should be dismissed based on (i) failure to make a pre-litigation demand and (ii) failure to state a claim.

1    The Court finds this matter suitable for decision without oral argument pursuant to Civil

2    Local Rule 7-1(b).  Having reviewed the parties' briefs, the relevant law, and the record in this

3    case, the Court GRANTS Defendants' Motion without leave to amend.

4    **I.    BACKGROUND**

5        **A.    Factual Background**

6            **1.    Overview**

7    The following facts derive from the allegations in the Consolidated Second Amended

8    Shareholder Derivative Complaint ("SAC") filed by Plaintiffs the Booth Family Trust, Hugues

9    Gervat, and Stacie Williams (together, "Plaintiffs") on behalf of Nominal Defendant VMware.  At

10   the pleading stage, the Court accepts as true all well-pleaded factual allegations and construes

11   them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d

12   681, 690 (9th Cir. 2011).

13   Plaintiffs are current shareholders of VMware, a software company.  SAC ¶¶ 1, 12–14.

14   VMware primary revenue sources come from licensing its software under perpetual licenses or

15   consumption-based contracts and related services consisting of software maintenance and support,

16   training, consulting services, and hosted services.  *Id*. ¶ 38.  VMware was incorporated in 1998,

17   and after a September 7, 2016, acquisition became an indirectly-held, majority-owned subsidiary

18   of Dell Technologies Inc. ("Dell Technologies").  *Id*. ¶¶ 18, 40.  On April 14, 2021, VMware

19   announced it had reached an agreement with Dell Technologies to spin off Dell Technologies'

20   81% equity ownership of VMware.  *Id*. ¶ 174.  The terms of the agreement included a special cash

21   dividend to all VMware stockholders immediately prior to the spinoff, and a pro-rata distribution

22   of the VMware shares held by Dell Technologies to the shareholders of Dell Technologies.  *Id.* at

23   ¶¶ 174–175.  The spinoff transaction was set for November 1, 2021,[1] and was expected to result in

24   Defendant Michael Dell—the majority stockholder of Dell Technologies—owning about 42% of

25   VMware's shares.  *Id.* ¶¶ 176–177.  Silver Lake Partners ("Silver Lake"), a significant stockholder

26

27   ────────────────
     [1] The SAC was also filed on November 1, 2021.

28   Case No.: 20-cv-03079-EJD
     ORDER GRANTING DEFTS.' MOT. TO DISMISS SAC

     2

United States District Court
Northern District of California

1    of Dell Technologies that counted Defendant Egon Durbin as its managing partner, was expected

2    to hold about 11% of VMware's shares following the spinoff.  *Id.* ¶¶ 45, 175.

3        Defendants are VMware's former CEO, Patrick P. Gelsinger; its CFO, Zane Rowe; and

4    certain members of its board of directors, *i.e.*, Michael Dell, Anthony Bates, Marianne Brown,

5    Michael Brown, Donald Carty, Egon Durban, Karen Dykstra, and Paul Sagan.  SAC ¶¶ 16–25.

6        Plaintiffs allege that Defendants engaged in improper conduct with respect to disclosures

7    to the SEC and the public about VMware's "backlog."  VMware's backlog was "comprised of

8    unfulfilled purchase orders or unfulfilled executed agreements at the end of a given period," and

9    included "[d]eals that were made in one quarter, but that the Company expected to deliver and

10    recognize in revenue the next quarter."  *Id.* ¶ 51.  Backlog is a key performance indicator of

11    existing demand for VMware's products as well as expected future cash flows and revenue.  *Id.* ¶

12    47.  According to Plaintiffs, VMware manipulated its reported backlog to smooth reported revenue

13    and earnings and did not disclose this backlog smoothing practice in public filings with the SEC or

14    in other public statements.  *Id.* ¶ 59.  Plaintiffs allege that Defendants caused VMware to file with

15    the SEC financial and other statements that did not meet the SEC's disclosure requirements.  *Id.*

16    The SAC details the specific allegedly false or misleading statements Defendants made between

17    August 23, 2018, when Defendants released the quarterly report for Q2 2019, and February 27,

18    2020, when they released the quarterly report for Q4 2020 and when VMware disclosed it had

19    been the subject of an SEC investigation regarding its backlog accounting and disclosures since

20    December 2019.  *Id.* ¶¶ 83–164.

21        Moreover, Plaintiffs allege that Defendants caused VMware to repurchase $1.334 billion

22    worth of its common stock during the same period of artificially inflated prices.  *Id.* ¶ 169.

23    Plaintiffs state that VMware's stock price dropped to a 52-week low the day after the release of its

24    February 27, 2020, reports.  *Id.* ¶ 167.  Plaintiffs additionally allege that Defendants Gelsinger and

25    Rowe engaged in improper insider stock sales between September 2019 and December 2019.  *Id.*

26    ¶¶ 179–186.

27        Plaintiffs claim that Defendants' actions have resulted in harm to VMware, including

28    Case No.: 20-cv-03079-EJD
    ORDER GRANTING DEFTS.' MOT. TO DISMISS SAC

costs connected to a related securities class action suit against VMware, costs related to the SEC's investigation, costs associated with stock repurchasing, costs incurred from compensation and benefits paid to the Defendants who breached fiduciary duties to VMware, and costs associated with irreparable harm to VMware's business, goodwill, and reputation. *Id.* ¶¶ 188-190.

### 2.    Defendants' allegedly misleading statements and failures to disclose

The SAC is unchanged from the prior complaint with respect to Plaintiffs' allegations of Defendants' false or misleading statements made between August 2018 and February 2020 via VMware's SEC filings, press releases, and conference calls. *See* ECF No. 73, Redline Between SAC and Amended Complaint ("Redline") at 19–39; SAC ¶¶ 83–170. Plaintiffs allege, in part, that Defendants Gelsinger, Rowe, Dell, Bates, Michael Brown, Carty, Durban, Dykstra, and Sagan[2] caused VMware to file with the SEC Current Reports (Forms 8-K), Quarterly Reports (Forms 10-Q), and an Annual Report (Form 10-K) containing statements about VMware's backlog and various revenue and income metrics, along with corresponding percentage increases from prior quarters. *See* SAC ¶¶ 83, 87, 90, 97, 100, 107, 121, 132, 138, 144, 149–150. Plaintiffs also allege that Defendants Gelsinger and Rowe gave misleading statements in press releases attached to SEC filings and in conference calls with financial analysts about VMware's license backlog, "strong" performance, and double-digit percentage growth of certain product lines. *Id.* ¶¶ 84–86, 91–96, 101–106, 121–129, 139–143, 151–157. Plaintiffs assert that these statements in the Forms 8-K, 10-Q, and 10-K and the associated press releases and conference calls were materially false and misleading because they failed to disclose "(i) that [VMware's] accounting and disclosures, including with respect to its backlog, did not comply with applicable accounting principles and disclosure regulations; and (ii) that, as a result, [VMware] was reasonably likely to incur regulatory scrutiny, and lawsuits." *Id.* ¶¶ 89, 99, 109, 135, 148, 162.

Plaintiffs additionally allege that Defendants Gelsinger, Dell, Bates, Michael Brown, Carty, Durban, Dykstra, and Sagan[3] caused VMware to issue on May 13, 2019, a definitive proxy

---

[2] That is, all Defendants except for Marianne Brown.
[3] Here, all Defendants except Rowe and Marianne Brown.

statement (the "Proxy Statement") containing materially false and misleading statement.  SAC ¶¶ 110–120.  Plaintiffs point specifically to the disclosures in the Proxy Statement regarding the Audit Committee's corporate governance with respect to financial statements; director compensation; an incentive plan regarding future grants of VMware's common stock to directors; and a purchase plan regarding the sale of common stock to VMware's employees at a discounted price.  *Id.*  Plaintiffs assert that the Proxy Statement was materially false and misleading because "(i) it misrepresented the accuracy of VMware's financial statements, including with respect to backlog; (ii) it misrepresented the Board's actual activities with respect to risk management while soliciting votes to reelect and compensate directors who were breaching their fiduciary duties and engaging in other misconduct; and (iii) it failed to disclose that each of the non-employee directors were interested in their own grants of discretionary compensation."  *Id.* ¶ 120.

### 3.    Gelsinger's and Rowe's stock sales

The SAC makes no new allegations regarding Defendants Gelsinger's and Rowe's stock sales, which Plaintiffs assert were made by the executive defendants while in the possession of materially adverse non-public information.  *See* Redline at 42–44; SAC ¶¶ 180, 184.  Plaintiffs allege that Defendant Gelsinger sold 141,181 VMware shares for a total of $23,417,156 between September 4, 2018, and July 19, 2019.  SAC ¶¶ 179–182.  According to Plaintiffs, these sales were "insider stock sales" that were suspicious in timing and amount because Gelsinger made no sales in the 18 months prior to September 2018, then sold about 25% of his VMware stock "close on the heels of the dissemination of false and misleading information regarding VMware's financial condition and business prospects."  *Id.*  Plaintiffs also allege that Defendant Rowe sold 104,218 VMware shares for a total of $17,857,367 between December 12, 2018, and December 6, 2019.  *Id.* ¶¶ 183–186.  As with Gelsinger, Plaintiffs allege that these sales were insider stock sales because Rowe sold "only 13,100 shares for $1.76 million" in two transactions in the 18 months before December 2018, and because the suspicious sales represented about 46% of Rowe's VMware stock and were made "close on the heels" of false and misleading statements about VMware's finances.  Plaintiffs further allege that during the relevant period, "VMware executives

1    sold 702,270 shares of VMware common stock at highly inflated prices, while in possession of

2    material non-public information." *Id*. ¶ 187.

3        **B.    Procedural Background**

4        On March 31, 2020, VMware shareholders filed a class action complaint asserting

5    securities fraud against VMware, *Lamartina v. VMware, Inc.*, No. 5:20-cv-02182-EJD (N.D. Cal.)

6    ("the Securities Class Action").  On May 5, 2020, Plaintiffs filed this derivative action.  ECF No.

7    1.  On October 16, 2020, Plaintiffs filed an Amended Shareholder Derivative Complaint.  ECF

8    No. 49 ("Amended Complaint").  The Court granted the Defendants' subsequent motion to

9    dismiss on September 30, 2021, with leave to amend.  ECF No. 68.  On November 1, 2021,

10   Plaintiffs filed the operative SAC asserting the following claims: (1) breach of fiduciary duty

11   against Gelsinger and Rowe; (2) breach of fiduciary duty against Michael Dell; (3) breach of

12   fiduciary duty against Michael Brown, Carty, Bates, Sagan, Marianne Brown, and Dykstra; (4)

13   *Brophy* claim for insider trading against Gelsinger and Rowe; (5) contribution for violation of

14   Sections 10(b) and 21D of the Exchange Act against Gelsinger and Rowe; (6) derivative claim for

15   violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 against Gelsinger, Michael

16   Dell, Bates, Michael Brown, Carty, Durban, Dykstra, and Sagan; and (7) unjust enrichment

17   against Gelsinger and Rowe.  ECF No. 72.  On November 22, 2021, Defendants moved to dismiss

18   the SAC.  ECF No. 74 ("Mot.").

19   **II.    LEGAL STANDARD**

20       **A.    Federal Rules of Civil Procedure 12(b)(6) and 9(b)**

21       A complaint must contain "a short and plain statement of the claim showing that the

22   pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The factual allegations must "state a claim to

23   relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.

24   Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the

25   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

26   A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim

27   upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "A motion to dismiss under Federal

28   Case No.: 20-cv-03079-EJD
     ORDER GRANTING DEFTS.' MOT. TO DISMISS SAC

United States District Court
Northern District of California

1   Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests

2   the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th

3   Cir. 2011) (quotation marks and citation omitted).  On a Rule 12(b)(6) motion, the district court is

4   limited to the allegations of the complaint, documents incorporated into the complaint by

5   reference, and matters which are subject to judicial notice.  *See La. Mun. Police Emps.' Ret. Sys. v.

6   Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

7   551 U.S. 308, 322 (2007)).  The Court must also construe the alleged facts in the light most

8   favorable to the plaintiff.  *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

9          In addition to Rule 8's requirements, fraud cases are also governed by the heightened

10   pleading standard of Rule 9(b).  A plaintiff averring fraud or mistake must plead with particularity

11   the circumstances constituting fraud, but malice, intent, knowledge, and other conditions of the

12   mind may be averred generally.  *See* Fed. R. Civ. P. 9(b).  Particularity under Rule 9(b) requires

13   the plaintiff to plead the "who, what, when, where, and how" of the misconduct alleged.  *Davidson

14   v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (citation omitted).  Securities fraud

15   claims must also satisfy the pleading requirements of the PSLRA, which states that the complaint

16   "shall specify each statement alleged to have been misleading, the reason or reasons why the

17   statement is misleading, and, if an allegation regarding the statement or omission is made on

18   information and belief, the complaint shall state with particularity all facts on which that belief is

19   formed." 15 U.S.C. § 78u-4(b)(1).  The PSLRA also requires a plaintiff to state with particularity

20   facts giving rise to a strong inference of a defendant's scienter.  *See id.* § 78u-4(b)(2).

21          Should the Court grant a motion to dismiss, it "should grant leave to amend even if no

22   request to amend the pleading was made, unless it determines that the pleading could not possibly

23   be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)

24   (internal quotation marks omitted).

25          **B.      Federal Rule of Civil Procedure 23.1 and Delaware Demand Futility Law**

26          "A derivative action is an extraordinary process where courts permit 'a shareholder to step

27   into the corporation's shoes and to seek in its right the restitution he could not demand in his

28   Case No.: 20-cv-03079-EJD
     ORDER GRANTING DEFTS.' MOT. TO DISMISS SAC

own.'" *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012 (9th Cir. 2010) (quoting *Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983)).  "Accordingly, strict compliance with Rule 23.1 and the applicable substantive law is necessary before a derivative suit can wrest control of an issue from the board of directors." *Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008).  "The substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief." *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) (quoting *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004)).  As VMware is a Delaware corporation, Delaware law applies.  SAC ¶ 15.

Under Delaware law, a shareholder must either make a pre-suit demand on the board of directors of the nominal defendant, or allege particularized facts sufficient to raise a "reasonable doubt that a majority of the Board would be disinterested or independent in making a decision on a demand." *Rales v. Blasband*, 634 A.2d 927, 930 (Del. 1993).  The relevant board of directors is generally comprised of those individuals serving at the time the operative complaint was filed. *See Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006); *cf. Park Emps.'& Ret. Bd. Emps.' Annuity & Benefit Fund of Chi. v. Smith*, 2016 WL 3223395, at *10 (Del. Ch. May 31, 2016), *aff'd* 175 A.3d 621 (Del. 2017) (en banc) (holding demand futility should be evaluated against the successor board "that was in a position to *actually* assess the Plaintiff's complaint" where board leadership changed four days after plaintiff filed complaint) (emphasis in original).  In an even-numbered board, a plaintiff must show that at least half of the board was interested or not independent.  *In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, at *7 n.75 (Del. Ch. Oct. 12, 2011) (internal quotations and citation omitted).

When evaluating demand futility, the Delaware Supreme Court has held that a court must ask three questions on an individualized, director-by-director basis:

1. whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
2. whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and
3. whether the director lacks independence from someone who received a material personal benefit from the alleged

Case No.: 20-cv-03079-EJD
ORDER GRANTING DEFTS.' MOT. TO DISMISS SAC

misconduct that would be the subject of the litigation demand
or who would face a substantial likelihood of liability on any
of the claims that are the subject of the litigation demand.

*United Food & Com. Workers Union & Participating Food Indus. Employers Tri-State Pension Fund v. Zuckerberg* ("*Zuckerberg*"), 262 A.3d 1034, 1059 (Del. 2021).  "If the answer to any of the questions is 'yes' for at least half of the members of the demand board, then demand is excused as futile."  *Id.*

## III.    DISCUSSION

Plaintiffs bring the same claims against the same Defendants as they did in the Amended Complaint, *i.e.*, (1) breach of fiduciary duty against Gelsinger and Rowe; (2) breach of fiduciary duty against Michael Dell; (3) breach of fiduciary duty against Michael Brown, Carty, Bates, Sagan, Marianne Brown, and Dykstra; (4) *Brophy* claim for insider trading against Gelsinger and Rowe; (5) contribution for violation of Sections 10(b) and 21D of the Exchange Act against Gelsinger and Rowe; (6) derivative claim for violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 against Gelsinger, Michael Dell, Bates, Michael Brown, Carty, Durban, Dykstra, and Sagan; and (7) unjust enrichment against Gelsinger and Rowe.  *See* SAC ¶¶ 276– 319; Am. Compl. ¶¶ 254–297; Redline at 67–74.  As in their motion to dismiss the Amended Complaint, Defendants contend that the Court should dismiss the SAC for two reasons: (1) Plaintiffs did not make the requisite pre-suit demand on VMware's board of directors before filing this derivative action and do not adequately plead demand futility, and (2) Plaintiffs fail to state a claim under Rule 12(b)(6).  Mot. at 2–3.  The Court addresses each in turn.

### A.    Demand Futility

In its Order Granting Motion to Dismiss filed on September 30, 2021, ECF No. 68 ("Prior Order"), the Court evaluated demand futility with respect to VMware's nine-member board of directors serving at the time the Amended Complaint was filed:  Defendants Gelsinger, Bates, Marianne Brown, Michael Brown, Carty, Michael Dell, Durban, Dykstra, and Sagan.  Prior Order at 11.  In ruling on the present Motion, the Court examines whether demand was futile with respect to the ten-member board existing when Plaintiffs filed the SAC:  Defendants Bates,

Case No.: 20-cv-03079-EJD
ORDER GRANTING DEFTS.' MOT. TO DISMISS SAC
9

Marianne Brown, Michael Brown, Carty, Michael Dell, Durban, Dykstra, and Sagan, and non-parties Raghu Raghuram and Kenneth Denman. *Braddock*, 906 A.2d at 786; SAC ¶ 195; Mot. at 8; *see* Opp'n at 11. To hold that demand was excused as futile, the Court must find that Plaintiffs have alleged particularized facts raising a reasonable doubt that at least five of the ten board members "would be disinterested or independent in making a decision on a demand." *Rales*, 634 A.2d at 930; *In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, at \*7 n.75.

### 1. Non-Party Denman

The SAC's allegations as to non-party director Kenneth Denman state only that Denman became a director of VMware in January 2021 and was on the board at the time the SAC was filed. SAC ¶¶ 29, 195. The Court therefore holds that Plaintiffs have not alleged demand futility as to Denman. *See Zuckerberg*, 262 a.3d at 1059. Plaintiffs do not argue otherwise. *See* Opp'n.

### 2. Defendants Marianne Brown, Michael Brown, Dykstra, and Sagan

The Court previously found that Plaintiffs had not adequately alleged that demand would have been futile under any prong of the *Zuckerberg* test as to Defendants Marianne Brown, Michael Brown, Dykstra, and Sagan. *See id.* at 18–30. The SAC includes no new allegations regarding the interestedness or independence of these four defendants. *See* Redline at 54–67. Plaintiffs once again argue that Defendants Marianne Brown, Michael Brown, Dykstra, and Sagan were interested directors because they faced a substantial likelihood of liability for the breach of fiduciary duty claim, and that Defendants Michael Brown, Dykstra, and Sagan faced a substantial likelihood of liability for the derivative claim for violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5. Opp'n at 19–23. However, Plaintiffs do not cite to any new allegations in the SAC that support their arguments. *Id.* (citing SAC ¶¶ 60–82, 125, 131, 141, 153, 163, 167); *see* Redline at 14–19, 28–39. Nor do Plaintiffs otherwise cure the deficiencies identified in the Prior Order, namely, a consistent lack of allegations particularized facts concerning Defendants Marianne Brown, Michael Brown, Dykstra, and Sagan that would permit the Court to find a substantial likelihood of liability on the fiduciary duty or derivative securities violation claims. As the Court previously noted, general assertions of knowledge and inaction—such as that the

United States District Court
Northern District of California

Case No.: 20-cv-03079-EJD
ORDER GRANTING DEFTS.' MOT. TO DISMISS SAC

1   Defendants are "sophisticated businesspeople" who have served as directors and officers of

2   companies with public reporting requirements for many years and as such are aware of the risks

3   posed by improper earnings management—are not sufficient to show demand futility. Prior Order

4   at 20; *see* Opp'n at 19. Accordingly, the Court again holds, for the same reasons described in the

5   Prior Order, that Plaintiffs have not adequately alleged a substantial likelihood of liability as to

6   Defendants Marianne Brown, Michael Brown, Dykstra, and Sagan.

7   　　　Plaintiffs do not argue that any of these four defendants are otherwise interested, or that

8   they lack independence from an interested director.[4] *See* Opp'n. The Court therefore holds that

9   Plaintiffs have not shown that demand was futile as to Defendants Marianne Brown, Michael

10  Brown, Dykstra, and Sagan. It follows that Plaintiffs can only prevail by showing that demand

11  was futile as to each of the remaining five directors: Michael Dell, Durban, Bates, and Carty and

12  non-party Raghuram. Plaintiffs have not carried their pleading burden as to at least Defendant

13  Bates. Demand futility as to Defendant Bates depends mainly on his alleged lack of independence

14  from an interested director, and so the Court first evaluates the interestedness of Defendants

15  Michael Dell and Durban.

16  　　　　　　　　**3.　　Defendants Michael Dell and Durban**

17  　　　Defendant Michael Dell and Silver Lake are the two largest shareholders of Dell

18  Technologies, with Michael Dell owning 91% of Dell Technologies' Class A shares and Silver

19  Lake owning 100% of the company's outstanding Class B shares. SAC ¶¶ 46, 196. Defendant

20  Egon Durban is the managing partner and co-CEO of Silver Lake. *Id.* ¶¶ 45, 232. As the Court

21  previously found, Plaintiffs pleaded "particularized facts suggesting that Michael Dell and Durban

22  have an incentive to ensure that VMware's stock is valued highly so that VMware can serve as a

23  source of dividend payouts to help alleviate Dell's debt through a spinoff, thus protecting Michael

24  Dell and Durban's investments in Dell." Prior Order at 17.

25  ─────────────────────

26  [4] Plaintiffs state in a footnote that they "maintain that Michael Brown, Sagan, and Marianne
    Brown are not independent." Opp'n at 11 n.4. However, they make no further argument and do

27  not point to any additional allegations new to the SAC. *See generally id.* Nor do Plaintiffs
    mention Defendant Dykstra in their Opposition. *See id.*

28  Case No.: 20-cv-03079-EJD
    ORDER GRANTING DEFTS.' MOT. TO DISMISS SAC

United States District Court
Northern District of California

Defendants argue that Plaintiffs have failed to plead that Defendants Michael Dell and Durban received a material person benefit from the alleged misconduct—backlog manipulation and revenue recognition—because the VMware spinoff from Dell Technologies has now taken place and the two defendants "received the same *pro rata* dividend as all other VMware stockholders, including the Plaintiffs in this litigation." Mot. at 15. This argument is misguided at best and disingenuous at worst. That Defendants Michael Dell and Durban received a pro rata dividend from the spinoff does not change that they—unlike other VMware stockholders—are heavily invested in Dell Technologies. Plaintiffs filed the SAC on November 1, 2021, the same date on which the payment for the special dividend from the spinoff was to be paid to VMware stockholders. SAC ¶ 176. Under these circumstances, Plaintiffs sufficiently alleged particularized facts indicating that Defendants Michael Dell and Durban had an incentive to avoid actions that might have decreased VMware's stock price, materially benefited from VMware's allegedly inflated stock price via the benefit of the spinoff to Dell Technologies, and would not have been able to impartially evaluate a demand to investigate the alleged backlog manipulation and revenue recognition prior to Plaintiffs' filing the SAC.

For the above reasons, the Court does not disturb its holding that Plaintiffs had adequately alleged Defendants Michael Dell and Durban were interested in the claims against them under the first prong of the *Zuckerberg* test because they received a personal benefit from the alleged misconduct. Prior Order at 17. It sees no reason to disturb that holding here.

### 4.    Defendant Bates

Defendant Anthony Bates has served as a director of VMware since February 2016. SAC ¶ 19. The Court previously found that Plaintiffs had not adequately pleaded that Defendant Bates was interested or lacked independence from an interested director. Prior Order at 18, 20, 24, 27–28. Plaintiffs have not cured the deficiencies identified in the Prior Order with respect to Defendant Bates's independence or interestedness.

### a.    Independence

Plaintiffs allege, as they did in the Amended Complaint, that Defendant Bates was not

independent of Defendant Durban.  There, Plaintiffs alleged that the two defendants "share a longstanding professional and philanthropic relationship" by virtue of their large donations to the same charity dedicated to fighting poverty and their mutual service on the charity's board of directors from 2012 to 2020.  Am. Compl. ¶ 191.  Plaintiffs also alleged that Defendants Durban and Bates "have a long-standing lucrative business relationship" because Silver Lake acquired a majority stake in Skype in 2009 that it sold to Microsoft for a large profit in May 2011, and Defendant Bates was made CEO of Skype while the company was "[u]nder Durban's control," served in that role from October 2010 to May 2011, and received $19.9 million in compensation in 2010 alone.  *Id.* ¶ 192.  Lastly, Plaintiffs alleged that Defendant Bates was compensated more at VMware, where he received $1.13 million over three years, than directors at other, similarly sized companies.  *Id.* ¶¶ 194, 219.  The Court rejected Plaintiffs' argument that these allegations sufficiently demonstrated Defendant Bates's lack of independence from Defendant Durban because the Amended Complaint did not allege that Bates's compensation was an unusual practice, include facts suggesting that Bates's brief employment at Skype in 2010 would be material to Bates today, explain why Bates's and Durban's connections to the same charity would indicate a lack of independence, or plead facts demonstrating that Bates's compensation as a VMware director was material to him.  Prior Order at 27–28.

Plaintiffs have added several paragraphs of allegations to the SAC to support their assertion of Defendant Bates's lack of independence.  *See* Redline at 48–50, 58–59.  The first set of new allegations details a "longstanding philanthropic and personal relationship" between the two defendants and their spouses, Abby Durban and Cori Bates, including the two couples' "involve[ment] in a half dozen charities together," the "appear[ance] [that they] raise money from each other in their roles as nonprofit fundraisers," and their attendance at "numerous dinners, luncheons, and other events together where they socialized and spent time together."  SAC ¶ 205.  The specific allegations focus on Mrs. Durban's and Mrs. Bates's involvement—*e.g.*, committee or board service and attendance at specific events—in five charities in 2013, 2017, and 2019, and on their membership on the same committee of a sixth charity from 2016 to 2019 and in 2021.  *Id.*

¶¶ 206–211.  Plaintiffs also allege that a photograph of Mrs. Durban and Mrs. Bates at one of the charity events in 2017 "support[s] that [they] are friends and have a personal relationship."  *Id.* ¶ 208.  Plaintiffs further allege that the Bateses served as chairs for a museum's annual gala in 2017 and that the Durbans donated between $25,000 and $49,999 to the gala that year, and "infer that as Gala Chairs the [Bateses] were charged with fundraising and that they solicited and obtained the sizable donation provided to the event by the Durbans."  *Id.* ¶ 210.

The second set of new allegations concern Defendants Bates and Durban's work together at Skype.  Plaintiffs allege that "Durban himself negotiated to hire Bates as CEO of Skype after Silver Lake acquired" the company, noting that Durban stated in an interview for a 2011 article that Bates was "just a unique property" in the "universe of potential [CEO] candidates."  SAC ¶ 213.  In the same interview, Bates alleged stated that he and Durban "sort of did the IPO prep. . . . In terms of missing these guys, yes… I'm going to miss the tutelage and the mentorship . . . But, I think we'll stay in touch."  *Id.*  Bates also stated that he spoke to Durban "maybe 10 times a day" when they worked together at Skype.  *Id.*

Given these allegations, Plaintiffs claim that Defendant Bates "could not consider a demand to sue Durban without also considering both[] his close professional collaboration with and 'tutelage' under Durban at Skype and the [effect] that suing Durban would have on his wife's philanthropic endeavors with Abby Durban."  *Id.* ¶ 239.  They argue that the two defendants' "extremely lucrative" work at Skype, in connection with the "depth and nature of [their] social and charitable interlock raises reason to doubt that Bates could independently consider whether to sue Durban."  Opp'n at 14–15.  However, the additional detail about the two defendants' business relationship at Skype does not lead to a reasonable inference of anything other than an intensive working relationship lasting under a year, during which time they prepared Skype for an IPO and then sold it to Microsoft.  *Id.* ¶¶ 212–213.  In fact, Defendant Bates's statements in a July 2011 interview—within two months after the sale of Skype to Microsoft—that "I'm going to miss the tutelage" and "I think we'll stay in touch" suggest not the development of a close relationship but rather the end of an endeavor.  *Id.*

Case No.: 20-cv-03079-EJD
ORDER GRANTING DEFTS.' MOT. TO DISMISS SAC
14

1      Further, the alleged ties between Defendants Bates and Durban are weaker than others that

2    the Delaware Supreme Court has rejected as sufficient to rebut the presumption of independence.

3    For example, in *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, "[a]llegations

4    that Stewart and the other director moved in the same social circles, attended the same weddings,

5    developed business relationships before joining the board, and described each other as 'friends'"

6    did not "provide a sufficient basis from which reasonably to infer that [allegedly dependent

7    directors] may have been beholden to Stewart."  845 A.2d 1040, 1051 (Del. 2004).  The Delaware

8    Supreme Court has since referred to the allegations in *Beam* as describing a "thin social-circle

9    friendship."  *Del. Cnty. Emps. Ret. Fund v. Sanchez*, 124 A.3d 1017, 1022 (Del. 2015).

10      Here, Plaintiffs do not allege even that Defendants Durban and Bates considered

11   themselves to be friends, although they assert—with apparent care not to overstate the facts—that

12   Abby Durban's and Cori Bates's charitable work and the single photograph of them "support[s]"

13   or creates a "reasonable inference" that the two women are friends.  SAC ¶¶ 205–211, 238; *see In*

14   *re CBS Corp. S'holder Class Action & Derivative Litig.*, 2021 WL 268779, at *30 & n.352 (Del.

15   Ch. Jan. 27, 2021) (allegations that director was "close friend" of interested director and served on

16   same non-profit board revealed "both personal and professional relationships" but did not show

17   lack of independence).  Plaintiffs' allegations do not rise to the level of those in *Beam*, which were

18   themselves insufficient, and are a far cry from the relationships described in the cases to which

19   Plaintiffs point.  *See Marchand v. Barnhill*, 212 A.3d 805, 818–19 (Del. 2019) ("very warm and

20   thick personal ties of respect, loyalty, and affection" between directors where interested director's

21   family provided nearly three decades of mentorship and opportunities to dependent director and

22   spearheaded donation effort leading to dependent director having a college facility named after

23   him); *Teamsters Loc. 237 Additional Sec. Benefit Fund v. Caruso*, 2021 WL 3883932, at *15 (Del.

24   Ch. Aug. 31, 2021) (director's "personal connections" with interested CEO went "beyond moving

25   in the same social circles," as evidenced by joint family trips on CEO's private plane, children

26   holding themselves out as being "as close as family," and CEO's donations to nonprofit

27   employing director's spouse); *In re Oracle Corp. Derivative Litig.*, 824 A.2d 917, 942–47 (Del.

28   Case No.: 20-cv-03079-EJD
     ORDER GRANTING DEFTS.' MOT. TO DISMISS SAC
                                        15

United States District Court
Northern District of California

Ch. 2003) (one interested director had been fellow professor of dependent directors for years at same university and other interested directors had donated or were publicly considering donating "extremely large" sums of money to dependent directors' academic institution).

Accordingly, the Court finds that Plaintiffs have not adequately pleaded that Defendant Bates lacks independence.

**b.      Interestedness**

Plaintiffs assert against Defendant Bates a direct claim for breach of fiduciary duty and a derivative claim for violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5.  SAC ¶¶ 288–293, 305–315.  Plaintiffs argue that Defendant Bates faces a substantial likelihood of liability on both claims against him, such that he was interested and could not have fairly considered a demand.[5]  Opp'n at 19–23.

The Court previously explained that the allegations in the Amended Complaint regarding Defendant Bates were not sufficiently particularized and did not demonstrate that Defendant Bates faced a substantial likelihood of liability on either claim.  Prior Order at 18–24.  The Court can find no new allegations supporting Plaintiffs' argument that Defendant Bates was interested because he faced a substantial likelihood of liability on the two claims brought against him, and Plaintiffs do not cite to any such allegations in their Opposition.  *See* Opp'n at 19–23 (citing SAC ¶¶ 60–82, 125, 131, 141, 153, 163, 167); Redline at 14–19, 28–39.  As with Defendants Marianne Brown, Michael Brown, Dykstra, and Sagan, the Court again holds, for the reasons described in the Prior Order, the Plaintiffs have not adequately alleged Defendant Bates was interested because he faced a substantial likelihood of liability on the claims asserted against him.  And because Plaintiffs have not shown that Defendant Bates was either interested or not independent, demand was not excused as to Defendant Bates.

**5.      Defendant Carty**

Defendant Donald Carty has served as a director of VMware since December 2015.  SAC

---

[5] Plaintiffs do not argue that Defendant Bates was interested because he received a material personal benefit from the alleged misconduct.  *See* Opp'n at 11–23.

Case No.: 20-cv-03079-EJD
ORDER GRANTING DEFTS.' MOT. TO DISMISS SAC

16

¶ 22.  The Court previously found that Plaintiffs had not adequately pleaded that Defendant Carty was interested or lacked independence from an interested director.  Prior Order at 18, 20, 24, 25–27.  As with Defendant Bates, Plaintiffs have not cured the deficiencies identified in the Prior Order with respect to Defendant Carty's independence or interestedness.

### a.    Independence

As in the Amended Complaint, Plaintiffs allege that Defendant Carty was not independent of Defendant Michael Dell.  In the Amended Complaint, Plaintiffs alleged that Defendant Carty has worked for Defendant Dell for nearly 30 years, beginning in 1992 as a director of Dell Technologies' predecessor organizations.  Am. Compl. ¶ 189.  While at Dell Technologies, Defendant Carty earned about $2.6 million in compensation as an executive in 2007 and 2008, and about $6.4 million in director fees, all "exclusively due to Michael Dell's decision to appoint Carty to the Board and hire him as an executive."  Id.  Lastly, Plaintiffs alleged that Defendant Carty's compensation of $995,000 over three years as a VMware director was greater than most other directors at similarly sized companies, and that his continued access to such compensation was reliant exclusively on the goodwill of Defendants Durban and Michael Dell.  Id. ¶¶ 194, 218.  The Court held that these allegations were insufficient to plead that Defendant Carty lacked independence because Plaintiffs had not supported their bare allegation regarding Carty's employment history by explaining "how the longevity of such a relationship demonstrate[d] a lack of independence" and had not included factual allegations to support their conclusion that Carty's compensation at Dell Technologies or VMware was material to him.  Prior Order at 25–27.

Plaintiffs have added two paragraphs of allegations to the SAC to support their assertion that Defendant Carty lacks independence.  See Redline at 47–48.  First, the SAC alleges that Defendant Michael Dell and Silver Lake completed a leveraged buyout of Dell Technologies in 2013, and that the transaction resulted in Dell Technologies directors receiving millions of dollars, "including partial compensation for options that were otherwise valueless because they were priced higher than the buyout price."  SAC ¶ 202.  Defendant Carty received $10 million dollars from the buyout, which he "reaped . . . exclusively due to Michael Dell's decision to appoint him

Case No.: 20-cv-03079-EJD
ORDER GRANTING DEFTS.' MOT. TO DISMISS SAC

to the Board and hire him as an executive." *Id.*  Second, Plaintiffs now allege that Defendant

Carty is a close friend of Defendant Michael Dell and that he "couldn't say no" to Dell.  *Id.* ¶ 203.

Plaintiffs explain that Defendant Carty, who had been the chair of Dell Technologies' Audit

Committee, was appointed as the company's Chief Financial Officer at a time that the SEC was

investigating its accounting.  *Id.*  Plaintiffs allege that reporting at the time—*i.e.*, around

December 2006[6]—quoted Defendant Carty as saying that Defendant Michael Dell and Dell

Technologies' CEO were "very good friend[s].  They just asked me to get involved, and they're

two people I couldn't say no to." *Id.*  Defendant Carty's appointment as CFO, despite his having

been the chair of the Audit Committee during the time period under investigation, is alleged to

demonstrate that he was "Michael Dell's close friend that could be trusted not to point blame at

Michael Dell or others at Dell." *Id.*

These additional allegations do not address the shortfalls identified by the Court in the

Prior Order.  *See* Prior Order at 25–27.  Most importantly, Plaintiffs have not included any

allegations demonstrating that Defendant Carty's compensation from Dell Technologies or

VMware was material to him.  In *Delaware County Employees Retirement Fund*—the only case

cited by Plaintiffs in their arguments regarding Carty's independence—the Delaware Supreme

Court held that the plaintiffs had pleaded facts supporting an inference that a director lacked

independence because the complaint alleged that (1) an interested director had "substantial

influence" over the dependent director's "full-time job and primary source of income" and (2) the

dependent director's compensation from that entity "constituted '30–40% of [his] total income for

2012." 124 A.3d at 1020–21.  The plaintiffs additionally pleaded that the two directors had been

close friends for over 50 years. *Id.* at 1020.  Here, Plaintiffs have included no similar allegations

about Defendant Carty that would permit the Court to infer that his "personal wealth [was] largely

---

[6] The SAC cites a MarketWatch article for the allegations regarding the two defendants'
friendship.  *See* SAC ¶ 203 & n.10.  Defendants request that the Court take judicial notice of the
article.  Mot. at 4 n.2; ECF 74-1 (Decl. of Elliot Greenfield), Ex. 11.  Plaintiffs do not object to the
request.  *See* Opp'n.  Because the article forms the basis for Plaintiffs' additional allegations made
to support their assertion of demand futility, the Court will consider the document, and specifically
its date of publication. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

United States District Court
Northern District of California

1    attributable" to his work at Dell Technologies and VMware.  *Id.*  For example, although Plaintiff

2    alleges that Defendant Carty "worked for" Defendant Michael Dell, the allegations show that this

3    work, except for two years in 2007 and 2008, was as a director.  SAC ¶ 201.  The SAC makes no

4    allegations about whether these directorships constituted a primary source of income, or whether

5    Defendant Carty held other full-time jobs before or during the directorships.  *See* SAC.  Without

6    allegations personalized to Defendant Carty's financial circumstances, the Court cannot conclude

7    that Carty's compensation from Dell Technologies and VMware was material to him.  *La. Mun.*

8    *Police*, 829 F.3d at 1059.

9         Similarly, Plaintiffs do not allege that Defendants Carty and Michael Dell have a

10   relationship, such as a decades-long close friendship, which might support an inference that Carty

11   lacked independence from Dell.  *See Del. Cnty. Emps. Ret. Fund*, 124 A.3d at 1021.  Instead, they

12   allege that Carty and Dell have worked together for about 30 years, and that in December 2006,

13   Carty described Dell as a "close friend" in discussing his appointment to the CFO position.  SAC ¶

14   203.  Plaintiffs also allege that Defendant Carty "admit[ted]" that he "couldn't say no" to

15   Defendant Dell, *id.* ¶¶ 203, 236, but the context of the quote—again describing Carty's acceptance

16   of the CFO position—does not remotely suggest that Carty could never refuse Dell in any context.

17   Taken together, these are not allegations of a close personal friendship spanning decades.  They

18   amount to an allegation that one director named another as a close friend, which is insufficient,

19   without more, to rebut the presumption of independence.  *Del. Cnty. Emps. Ret. Fund*, 124 A.3d at

20   1022 n.22 (citing *Beam*, 845 A.2d at 1051–52); *Zuckerberg*, 2021 WL 4344361, at *20.

21        Accordingly, the Court finds that Plaintiffs have not adequately pleaded that Defendant

22   Carty lacks independence.

23                              **b.**     **Interestedness**

24        Plaintiffs assert against Defendant Carty a direct claim for breach of fiduciary duty and a

25   derivative claim for violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5.  SAC

26   ¶¶ 288–293, 305–315.  As with Defendant Bates, Plaintiffs argue that Defendant Carty faces a

27   substantial likelihood of liability on both claims against him, such that he was interested and could

28   Case No.: 20-cv-03079-EJD
     ORDER GRANTING DEFTS.' MOT. TO DISMISS SAC

1   not have fairly considered a demand.  Opp'n at 19–23.  And as with Defendant Bates, the Court

2   can find no new allegations supporting Plaintiffs' argument.  *See id.* (citing SAC ¶¶ 60–82, 125,

3   131, 141, 153, 163, 167); Redline at 14–19, 28–39.  The Court previously rejected this argument

4   because the allegations in the Amended Complaint were insufficiently particularized and did not

5   demonstrate that Defendant Carty faced a substantial likelihood of liability on either claim.  Prior

6   Order at 18–24.  As the SAC mirrors the Amended Complaint on this issue, the Court holds, for

7   the reasons described in the Prior Order, the Plaintiffs have not adequately alleged Defendant

8   Carty was interested due to a substantial likelihood of liability on the claims asserted against him.

9       Based on the foregoing, Plaintiffs have not shown that Defendant Carty was interested in

10  the action or lacked independence from an interested director such that demand was excused.

### 6.    Non-Party Raghuram

12      Non-Party Raghu Raghuram is the current CEO of VMware.  SAC ¶ 28.  He has worked at

13  VMware since 2003, joined VMware's Board in May 2021, and became CEO in June 2021.  *Id.*

14  Raghuram was not a director when Plaintiffs filed the Amended Complaint, but was a director at

15  the time of the SAC's filing.  *See id.*; Opp'n at 9.  Plaintiffs allege that Raghuram is not

16  independent of Defendants Gelsinger, Rowe, Michael Dell, or Durban.  *Id.* ¶¶ 225, 244–250.

17      As to Defendants Gelsinger and Rowe, Plaintiffs allege that were Raghuram to sue either

18  of the two, he would "effectively [] conced[e] that the Company, through Gelsinger and Rowe,

19  had issued misleading statements which would prejudice the Company's defense in the Securities

20  Class Action."  *Id.* ¶ 225.  Plaintiffs further allege that Raghuram would not sue Gelsinger because

21  he has referred to Gelsinger as a mentor, and that he would not sue Rowe because they work

22  together on a daily basis as CEO and CFO of VMware.  *Id.*  And as to Defendants Michael Dell

23  and Durban, Plaintiffs allege that Raghuram is beholden to the two, who together (through Silver

24  Lake), control Raghuram's "continued employment as CEO and access to the enormous

25  compensation that he earns in that role."  SAC ¶ 244.  Specifically, Plaintiffs allege that Raghuram

26  would forfeit $25 million in equity grants were his employment terminated, and that he therefore

27  will not take any action against Dell or Durban.  *Id.* ¶ 247.

United States District Court
Northern District of California

1    Defendants argue that the allegations about Raghuram's mentor and working relationships

2    with Gelsinger and Rowe, respectively, do not excuse demand.  Mot. at 13.  They additionally

3    contend that the pendency of the Securities Class Action is irrelevant to Raghuram's

4    independence.  *See id.* at 14.  Plaintiffs do not address these arguments.  *See* Opp'n.  With respect

5    to the latter argument, Plaintiffs' allegation about a prejudicial effect in the Securities Class Action

6    is a conclusory legal conclusion that cannot be the basis for a finding that a director lacks

7    independence.  *See La. Mun. Police*, 829 F.3d at 1058–59.  As for the former argument, even

8    assuming that Gelsinger and Rowe face a substantial likelihood of liability, the Court agrees with

9    Defendants that Plaintiffs' allegations regarding Raghuram's lack of independence from Gelsinger

10   and Rowe are impermissibly conclusory.  A single reference to a former work colleague or

11   supervisor as a "mentor" cannot be sufficient to overcome to presumption of independence.  *See*

12   *McElrath ex rel. Uber Techs., Inc. v. Kalanick*, 2019 WL 1430210, at *18 (Del. Ch. Apr. 1, 2019)

13   (finding allegations that director and former CEO were "close," "confidant[s]," and "all[ies]"

14   insufficiently particularized to show director lacked independence due to close relationship).

15   However, Plaintiffs have alleged more specific facts regarding Raghuram's lack of

16   independence from Defendants Michael Dell and Durban.  "Under the great weight of Delaware

17   precedent, senior corporate officers generally lack independence for purposes of evaluating

18   matters that implicate the interests of a controller."  *In re Ezcorp Inc. Consulting Agreement*

19   *Derivative Litig.*, 2016 WL 301245, at *35 & n.34 (Del. Ch. Jan. 25, 2016) (collecting cases).

20   Although Plaintiffs have not specified the governance structure of VMware, they have nonetheless

21   alleged that Defendant Michael Dell is the controlling shareholder of VMware, and that

22   Defendants Durban (through Silver Lake) and Michael Dell hold a majority of VMware's shares

23   following the spinoff transaction.  SAC ¶¶ 177, 226.  Plaintiffs have further alleged that an action

24   against Defendants Michael Dell or Durban could jeopardize Raghuram's continued employment

25   and thereby risk approximately $25 million in equity awards, and that Raghuram had never before

26   been compensated at such a high level.  *Id.* ¶¶ 245–247.  Drawing all inferences in Plaintiffs'

27   favor, Plaintiffs have created a reasonable inference that Raghuram could not impartially consider

United States District Court
Northern District of California

28   Case No.: 20-cv-03079-EJD
ORDER GRANTING DEFTS.' MOT. TO DISMISS SAC

1    a litigation demand. *Rales*, 634 A.2d at 937 (holding that President and CEO of corporation could

2    not impartially consider litigation demand which, if granted, would have resulted in suit adverse to

3    significant stockholders); *In re Ezcorp Inc.*, 2016 WL 301215, at *35 ("When officers 'derive their

4    principal income from their employment,' that fact 'powerfully strengthens the inference' that the

5    officers could not consider a demand on the merits, because 'it is doubtful that they can consider

6    the demand ... without also pondering whether an affirmative vote would endanger their continued

7    employment.'") (citation omitted).  This finding is further supported by Raghuram's disclosed

8    lack of independence under the NYSE listing rules.  SAC ¶ 200; *see* Opp'n at 12 & n.5; *Sandys v.*

9    *Pincus*, 152 A.3d 124, 131, 133 (Del. 2016) (holding that lack of independence under listing rules,

10   though not dispositive, "has important relevance" for demand futility analysis and "amplif[ies]"

11   plaintiff's other arguments).

12          The Court therefore finds that Plaintiffs have not shown that Raghuram lacked

13   independence from Defendants Gelsinger and Rowe, but have sufficiently pleaded a lack of

14   independence from Defendants Michael Dell and Durban.  Accordingly, demand was excused as

15   to Raghuram with respect to Plaintiffs' claims against Michael Dell and Durban.

16                  **7.      Summary**

17          The above finding ends the inquiry as to demand futility.  For each of Plaintiffs' claims,

18   there are at least seven individuals on VMware's ten-member board—non-party Denman and

19   Defendants Bates, Carty, Marianne Brown, Michael Brown, Dykstra, and Sagan—who have not

20   been shown to be interested or not independent and thus incapable of fairly reviewing a demand.

21   At best, Plaintiffs have sufficiently alleged that demand was excused as to three directors—

22   Defendants Michael Dell, Durban, and Raghuram—for the claims against Defendants Michael

23   Dell and Durban.  Because Plaintiffs have not shown that at least half of the directors serving at

24   the time the SAC was filed had either received a material benefit from the alleged misconduct,

25   faced a substantial likelihood of liability, or were not independent of a defendant who received a

26   material benefit or faced a substantial likelihood of liability, demand was not excused as futile on

27   any claim brought in the SAC.  *Zuckerberg*, 262 A.3d at 1059.

28   Case No.: 20-cv-03079-EJD
     ORDER GRANTING DEFTS.' MOT. TO DISMISS SAC

United States District Court
Northern District of California

### B.      Failure to State a Claim

Defendants also move to dismiss the SAC based on a failure to state a claim under Rule 12(b)(6).  Mot. 22–23.  Because the Court finds that Plaintiffs have failed to plead demand futility, it need not reach this argument.

### C.      Leave to Amend

The Court previously granted Plaintiffs leave to amend the complaint to "allege facts that could show that demand would be futile."  Prior Order 30–31.  Plaintiffs alleged no relevant facts about the new director, non-party Denman; alleged no new facts as to Defendants Marianne Brown, Michael Brown, Dykstra, or Sagan; and included new allegations regarding Defendant Bates that, though detailed and the apparent result of thorough research, remain insufficient to raise a reasonable inference that Defendant Bates was interested or not independent from Defendant Durban.  The Court therefore finds that amendment would be futile, and will dismiss the SAC without leave to amend.  *See Curry v. Yelp Inc.*, 875 F.3d 1219, 1228 (9th Cir. 2017).

## IV.      CONCLUSION

For the reasons given above, the Court GRANTS Defendants' Motion to Dismiss the Consolidated Second Amended Shareholder Derivative Complaint WITHOUT LEAVE TO AMEND.  The action is DISMISSED WITH PREJUDICE.  Accordingly, a separate judgment will enter, and the Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: March 21, 2023

EDWARD J. DAVILA
United States District Judge